OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, appellant, Mary Grace Patnik appeals the judgment of the Geauga County Court of Common Pleas, denying her motion to show cause. We affirm the judgment of the lower court.
 {¶ 2} This appeal is the second arising from a series of legal skirmishes surrounding the divorce between Patnik and appellee, Jeffrey Tippie, which was granted by the lower court on February 6, 2003.Tippie v. Patnik, 11th Dist. No. 2005-G-2665, *Page 2 2006-Ohio-6532, at ¶ 8. The vast majority of these battles relate to the whereabouts and attempted recovery of certain property from Tippie; to wit, gold and silver coins and bars, and a silverware set Patnik inherited from her parents, which were previously determined by the court to be her separate property. Id. at ¶¶ 4-6.
 {¶ 3} Between April 2002, and February 2005, Patnik filed three motions to show cause related to the trial court's orders to return various property, including the aforementioned coins and bars, and silverware, and to pay her attorney fees related to these motions.
 {¶ 4} In July 2005, the trial court ordered Tippie to serve sixty days in jail for contempt related to the February 2005 motion to show cause, but provided that the jail sentence would be suspended, provided Tippie purge himself of the contempt "by delivering to Ms. Patnik on or before August 3, 2005, the silver and gold coins and bars and the silverware, or by paying her an amount equal to the fair market value." As an additional purge condition, the court ordered Tippie to pay Patnik a total sum of $6,019.50 for the attorney fees associated with the various motions. Id. at ¶ 28.
 {¶ 5} Tippie timely appealed this judgment to our court. The judgment of the trial court was stayed pending this appeal after Tippie had served 32 days of the 60-day sentence. We affirmed the lower court's judgment on December 8, 2006.
 {¶ 6} On July 11, 2006, while the prior appeal was pending, Patnik filed yet another motion to show cause. This motion alleged that Tippie, although he had "made several payments to [Patnik] as a condition of his work release privileges while he was in jail," remained largely non-compliant with the trial court's July 2005 order to pay for the gold and silver bars and her attorney fees. *Page 3 
 {¶ 7} On October 30, 2006, a hearing was held on Patnik's motion to show cause before the trial court judge. Following this hearing, the court entered the following order:
 {¶ 8} "There is no dispute that Husband has been held in contempt previously, most recently * * * on or about July 25, 2005. The court's ruling with respect to that decision is on appeal at this time * * *.
 {¶ 9} "In the instant case, the dispute is over the same or similar issues as in the [earlier] Motion to Show Cause. There are three areas of contention.
 {¶ 10} "The first is the gold and silver coins and bars which were addressed at Paragraph 39 of the Magistrate's Decision, filed January 21, 2003, and which ultimately was adopted by the Court * * *.
 {¶ 11} "THE COURT FINDS that Husband denies that he has this property but that Wife agrees he may pay for them instead. The parties agree their value is $2,794.88. Husband is not in contempt on this issue. THE COURT ORDERS Husband shall pay $2,794.88 to the Wife within 60 days hereof. IT IS SO ORDERED.
 {¶ 12} "The second item is the silverware addressed at Paragraph's [sic] 42 and 43 of the Magistrate's Decision, which again was adopted by the Court. The husband denies he has the silverware. The wife disputes this and claims he has it, citing to the language in Paragraph 43 of the Magistrate's Decision.
 {¶ 13} "THE COURT FINDS Husband shall return the silverware to the Wife within 14 days hereof. If he does not do so, it shall be valued by the Court at hearing which is hereby set for FRIDAY, DECEMBER 22, 2006 AT 11:00 AM. After valuation by *Page 4 
the Court, Husband shall have 30 days to pay or he shall be in contempt hereof. IT IS SO ORDERED.
 {¶ 14} "Third, and last, concerns past counsel fees. The parties agreed in open Court that the amount owed (disregarding any clams with respect to this * * * Motion to Show Cause) is $6,019.50 less $2,500 paid, leaving $3,519.50 owed * * *.
 {¶ 15} "* * *
 {¶ 16} "WHEREFORE, the Plaintiff/Respondent/Husband, Jeffrey M. Tippie is hereby found in contempt of this Court's Order for failure to pay counsel fees. THE COURT HEREBY ORDERS Jeffrey M. Tippie to pay the costs of these proceedings, for which judgment is rendered and execution may issue, and to serve a 90 day term of incarceration at the Geauga County Safety Center for which he shall report Monday, November 13, 2006 at 8:00 am. He may purge by paying to Defendant/Wife the sum of $3,519.50 on or before the time and date his incarceration is to begin.
 {¶ 17} "IT IS SO ORDERED."
 {¶ 18} Implicit in the court's ruling is the recognition that, even if Tippie had once possessed the silverware, he no longer has it in his possession. Thus, a financial recovery for the silverware was all that would be possible.
 {¶ 19} On December 14, 2006, Patnik filed a motion to continue the valuation hearing, which was granted by the court. The hearing was rescheduled for March 1, 2007.
 {¶ 20} A bench hearing was held as scheduled on the issue of the valuation of the silverware. The court heard testimony from both parties. Patnik testified that the silverware was the "cactus pattern," made by Georg Jensen in Denmark in *Page 5 
approximately 1930. Patnik introduced evidence, in the form of a spreadsheet prepared by her attorney, listing each item allegedly missing from her silverware set, along with prices obtained by requesting information from three outside sources, including Replacements Ltd., located in North Carolina and Alastair Crawford, LLC, a company in New York City, which dealt exclusively in Georg Jensen silverware. In addition, she introduced copies of three web pages from the "Unica Home" website, listing thirty-one separate descriptions of certain silverware items from the cactus collection, along with their prices. Tippie objected to the admission of this testimony as hearsay. Patnik was asked her opinion of the value of the silverware. She answered that, to her, the silverware was "priceless." When pressed to assign a missing value to the items, she answered that in her opinion, the silverware was valued at $55,000. When Tippie testified, he introduced no evidence as to the value of the silverware, but did introduce a DVD recording of a videotape he had taken shortly after the parties were married. Tippie testified that he had taken videotape of various rooms in the house and the items therein, including the silverware, for insurance purposes. His videotape and testimony indicated that there were significantly fewer items in the silverware collection than Patnik claimed. Following the hearing, the trial court requested that both parties brief the issue of valuation and the admissibility of Patnik's exhibits.
 {¶ 21} On April 6, 2007, the trial court issued its judgment entry, denying Patnik's motion to show cause. The judgment entry read, in relevant part, as follows:
 {¶ 22} "Defendant Mary Grace Patnik attempted to meet the burden of establishing the value of the silverware by introducing exhibits and she testified with regard to her opinion as to the value of the silverware. *Page 6 
 {¶ 23} "Exhibits 2 and 3, (faxes from Replacements, Ltd. and from Alastair Crawford, LLC) are clearly hearsay in that they were prepared by third parties and were offered into evidence to prove the truth of the matter asserted, namely the value of the silverware. Likewise, Exhibit 1, the spreadsheet; and, Exhibit 4 photographs from the internet, are also hearsay. These exhibits are excluded from evidence.
 {¶ 24} "* * *
 {¶ 25} "Having been afforded the opportunity to establish a reasonable value for the subject silverware, and having failed to meet the burden, Defendant's Motion to Show Cause is hereby denied."
 {¶ 26} It is from this judgment that Patnik timely appealed, assigning the following as error:
 {¶ 27} "The trial court erred in denying Patnik's Motion to Show Cause."
 {¶ 28} The granting or denial of a motion to show cause is reviewed under an abuse of discretion standard. State ex rel. Delco Moraine Div.,General Motors Corp. v. Indus. Comm. (1990), 48 Ohio St.3d 43, 44;Lucas v. Lucas, 11th Dist. No. 2007-L-058, 2007-Ohio-5607, at ¶ 10 ("A trial court's contempt orders are reviewed for abuse of discretion"). "An abuse of discretion consists of more than an error of law or judgment. Rather, it implies the court's attitude is unreasonable, arbitrary, or unconscionable." Lyons v. Bowers, 11th Dist. No. 2006-L-119, 2007-Ohio-1548, at ¶ 17 (citation omitted). If there is "some competent, credible evidence" supporting the trial court's ruling on a motion to show cause, no abuse of discretion will be found.Welty v. Welty, 11th Dist. Nos. 2007-A-0013 and 2007-A-0015,2007-Ohio-5217, at ¶ 26 (citation omitted). *Page 7 
 {¶ 29} Patnik raises two arguments under her sole assignment of error. First, she argues that the trial court erred by failing to address the "three branches" of her motion to show cause in its final judgment entry. In essence, she argues that the trial court erred in denying her motion to show cause, because it did not explicitly address its earlier findings, following the October 30, 2006 hearing, that Tippie had not returned the gold and silver coins and bars and had not paid her attorney fees, even though the court had previously found Tippie in contempt with regard to the issue of attorney fees. We disagree.
 {¶ 30} Contempt of court has been variously defined as "disobedience of an order of a court," and "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Denovchek v. Bd. ofTrumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 15 (citation omitted). Contempt powers are considered inherent in the court, and considered necessary to the proper exercise of judicial functions. Id.
 {¶ 31} As established in the parties' earlier appeal to this court, the contempt orders imposed in the instant case are civil in nature.Tippie, 2006-Ohio-6532, at ¶ 42. This is because the sanctions imposed were "primarily for reasons benefiting the complainant and are remedial and coercive in nature." Id. at ¶ 39 (citations omitted). Since the current contempt order imposed is likewise civil in nature for the same reasons as previously explained, "prison sentences are conditionally imposed, and `the contemnor is said to carry the keys of his prison in his own pocket, `" thus, the court has the inherent power to suspend or terminate the sentence if the contemnor complies with the court's orders. Id. (citation omitted). "A key aspect of a civil contempt * * * is the *Page 8 
opportunity for the contemnor to purge himself of the contempt sanction, and the discontinuation of the sanction once compliance is achieved." Id. at ¶ 40, citing In re Purola (1991), 73 Ohio App.3d 306, 312
(citations omitted).
 {¶ 32} Furthermore, "the court making the contempt order is the exclusive judge of its own contempt proceedings and has sole and full power and control * * * [to] modify, relieve [or] suspend a fine or imprisonment." Juvenile Protective Assn. v. Roebling (1916), 26 Ohio Dec. 219, 221 (citations omitted).
 {¶ 33} In the instant case, the trial court denied Patnik's motion to show cause in its judgment entry. In so doing, the trial court is presumed to have ruled on all of the issues raised within a motion. See, e.g., Carnegie Distrib. Co. v. Cuyahoga Cty. Bd. of Revision (May 28, 1981), 8th Dist. No. 42815, 1981 Ohio App. LEXIS 13999, at *3 (in granting or denying a motion, "the trial court is presumed * * * to have decided th[e] issues * * *").
 {¶ 34} A review of the record supports the trial court's decision. With regard to the gold and silver coins and bars, the record demonstrates that the parties had stipulated to a value of $2,794.88, and that this balance was paid. Furthermore, the record revealed that Tippie had taken out a loan against his 401K at work to pay Patnik's "last attorney bills." Patnik did not object to this testimony.
 {¶ 35} Accordingly, we find no abuse of discretion in the trial court's decision regarding these issues.
 {¶ 36} Patnik next argues that she presented sufficient evidence for the court to have determined the value of the missing silverware in the form of her own testimony, *Page 9 
and thus, the trial court abused its discretion by not granting her motion to show cause with regard to the silverware. We disagree.
 {¶ 37} It is well-settled that, "[i]n ordering damages caused by a violation of a court order, the court need not measure the amount of such damages precisely when seeking to compensate the aggrieved party."Garnett v. Garnett (Aug. 15, 2000), 10th Dist. No. 00AP-84, 2000 Ohio App. LEXIS 3681, at *4 (citation omitted). "As to factual determinations, a reviewing court is guided by a presumption that the findings of the trial court were correct." Id. (citations omitted). Furthermore, it is well-settled that matters related to the admission or exclusion of evidence are "within the sound discretion of the trial court" and will not be reversed by a reviewing court, absent a showing that the trial court abused that discretion. In re Veccia, 11th Dist. No. 2005-T-0141, 2006-Ohio-6095, at ¶ 39.
 {¶ 38} In the instant matter, the trial court excluded Patnik's documentary evidence from third parties related to the value of the silverware as hearsay. "Hearsay, as defined by Evid.R. 801(C), is a statement, other than one made by the declarant while testifying at the trial, offered into evidence to prove the truth of the matter asserted. Pursuant to Evid.R. 802, hearsay is not admissible unless an exception is applicable." Ryser v. Conrad, 11th Dist. No. 2001-T-0034, 2001-Ohio-8783, 2001 Ohio App. LEXIS 5450, at *7.
 {¶ 39} The general and long-standing rule in Ohio states that "[w]hen market value cannot be feasibly obtained * * * the owner of personal property, because of such ownership, has a sufficient knowledge of its value to be qualified to give an opinion thereon which will be some evidence of the actual value, though not conclusive. The *Page 10 
rule is especially applicable where the property may have a peculiar worth to plaintiff." Bishop v. East Ohio Gas Co. (1944),143 Ohio St. 541, 546 (emphasis added). As this court noted in Payton v. Auto Depot,Inc. (June 29, 1990), 11th Dist. No. 88-L-13-217, 1990 Ohio App. LEXIS 2707, "Bishop, and the line of cases allowing owners' opinions as to value have never inquired as to the source of the owner's opinion. * * * It was only that the owners' opinion was given validity." Id. at *5-6, citing Miller v. Banks (1954), 97 Ohio App. 557, and Kohnle v.Carey (1946), 80 Ohio App. 23. Patnik also cites to the Second District case of Baber v. Dennis (1979), 66 Ohio App.2d 1, in which the court stated they knew of "no rule that [an] owner is disqualified from testifying to the value of her own property merely because of a reliance upon information from another," to support her proposition. Id. at 8.
 {¶ 40} Although we do not argue with the viability of the general rule as established by Bishop, we note that the aforementioned cases, with the exception of Payton, were all decided prior to the adoption of the Ohio Rules of Evidence. See State v. Wallace (1988), 37 Ohio St.3d 87,89 at fn.3; Corrigan v. Corrigan (Dec. 30, 1986), 4th Dist. No. 1300, 1986 Ohio App. LEXIS 9954, at *15 (the Ohio Rules of Evidence were adopted in 1980).
 {¶ 41} Consistent with the holding in Bishop, Evid.R. 602 states: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may * * * consist of the witness' own testimony." (Emphasis added).
 {¶ 42} However, Evid.R. 701, regarding the opinion testimony by lay witnesses, states: "If the witness is not testifying as an expert, the witness' testimony in the form of *Page 11 
opinions or inferences is limited to those opinions or inferences which are (1) rationally based upon the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." (Exmphasis added).
 {¶ 43} Evid.R. 602 states that it is "subject to the provisions ofRule 703, relating to opinion testimony by expert witnesses." (Emphasis added). Evid.R. 703 states: "The facts * * * in the particular case upon which an expert bases an opinion * * * may be those perceived by the expert or admitted into evidence at the hearing." Evid. R. 702 states that "[a] witness may testify as an expert if all of the following apply: (A) The witness' testimony relates to matters beyond the knowledge or experience possessed by lay persons * * *; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable * * * specialized information."
 {¶ 44} Based upon the limited market for antique silverware, and the specialized knowledge required for the valuation thereof, the testimony of the third-party witnesses would have been expert testimony under the Rules of Evidence. As is clear from the rules, testimonial evidence of an expert witness would only be allowed once the expert was qualifiedas an expert prior to testifying. R.C. 702(B).
 {¶ 45} In the case sub judice, Patnik, after offering her testimony as to the value of the silverware, admitted to not being an expert in the valuation or appraisal of silverware. This would not, in itself, be dispositive under either Bishop or the Ohio Rules of Evidence. However, when asked further about how she had reached her opinion as to the value of the silverware, Patnik admitted that she relied solely on theopinions of third parties, i.e., Replacements Ltd., Crawford, and Utica Home. *Page 12 
 {¶ 46} Ultimately, the issue of whether the third parties with whom she had contact in order to establish the basis of her opinion were experts is irrelevant, insofar as her ability to testify as to the value of the silverware, since none of these third parties were called as witnesses. Evid.R. 602 requires the basis of her opinion come from "personal knowledge." By Patnik's own admission, her valuation of the silverware was not based on such knowledge.
 {¶ 47} Even under the Bishop standard, we consider Patnik's admitted lack of personal knowledge a fatal flaw, since the basis of her opinion as to value of the silverware relied "solely on hearsay, which is inadmissible evidence." Streifthau v. Streifthau (May 20, 1985), 12th Dist. No. CA84-08-087, 1985 Ohio App. LEXIS 7722, at *11 (citation omitted); accord, Annotation (1954), 37 A.L.R. 2d 967, 985. ("[W]here it plainly appears in any case that the owner has no knowledge of the valuehe expresses an opinion about, the presumption arising from ownership is overcome and his opinion is inadmissible."). (Emphasis added).
 {¶ 48} We, likewise, find Patnik's reliance on Garnett andHardesty v. Hardesty (Dec. 13, 1991), 11th Dist. No. 90-G-1582, 1991 Ohio App. LEXIS 5962, to be distinguishable on the facts. In bothGarnett and Hardesty, the courts were merely asked to consider whether the respective parties' testimony regarding the value of the missing items was against the manifest weight of the evidence, rather than a challenge to the admissibility of the valuation evidence based upon hearsay. See Garnett, 2000 Ohio App. LEXIS 3681, at *7;Hardesty, 1991 Ohio App. LEXIS 5962, at *15. More importantly, in both of the aforementioned cases, the evidence of the valuations accepted by the court was based upon personal knowledge rationally based on the *Page 13 
witness' own perceptions. See Garnett, 2000 Ohio App. LEXIS 3681, at *4-*5 (valuations of missing items were based upon her memory of "what some of the items had cost," and the fact that "she had gone to stores to look at the prices of various items"); Hardesty, 1991 Ohio App. LEXIS 5962, at *16 (witness based his estimate of the values of the sterling flatware by identifying silverware that was "roughly similar" to that which was missing and going to jewelry stores and perusing catalogs personally to establish the values).
 {¶ 49} Since there is no basis for Patnik's valuations of the silverware predicated upon her own knowledge or perception, we cannot conclude the trial court abused its discretion in finding her valuations "suspect, at best," or in denying her motion to show cause.
 {¶ 50} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion.