[Cite as *Brown v. Senor Gringo's, Inc.*, 2010-Ohio-985.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STEVE BROWN, ET AL.,

    PLAINTIFFS-APPELLEES,              CASE NO. 4-09-18

    v.

SENOR GRINGO'S, INC.,              O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 06 CV 37772**

**Judgment Affirmed**

**Date of Decision:   March 15, 2010**


APPEARANCES:

    *Edward T. Mohler* **for Appellant**

    *David P. Rupp, Jr. and Tennille Becker Newton* **for Appellee,**
    **German Mutual Insurance Company**

**PRESTON, P.J.**

{¶1} Defendant-appellant, Senor Gringo's, Inc. (hereinafter "Senor Gringo's"), appeals the Defiance County Court of Common Pleas' grant of summary judgment in favor of defendant-appellee, German Mutual Insurance Company (hereinafter "German Mutual"). For the reasons that follow, we affirm.

{¶2} Around December 20, 2005, Senor Gringo's had a fire that damaged Underwater World Fish & Pets, Inc. (hereinafter "Underwater World"), a neighboring business and co-tenant in the Northtowne Mall in Defiance, Ohio owned and operated by Steve and Kimberly Brown (hereinafter "the Browns"). (Mar. 24, 2006 Complaint, Doc. No. 1). Thereafter, the Browns presented an insurance claim for the damages to their insurance company, German Mutual, but the parties were unable to settle the insurance claim. (Id.).

{¶3} On March 24, 2006, Underwater World and the Browns (collectively "plaintiffs") filed a complaint against German Mutual alleging a breach of the insurance contract and bad faith. (Id.). The plaintiffs also alleged a breach of contract claim against JJ Gumberg Company, d.b.a. Northtowne Mall (hereinafter "Northtowne"), based upon their lease agreement. (Id.).

{¶4} On May 19, 2006, plaintiffs filed an amended complaint naming Senor Gringo's as a defendant and alleging negligence against Senor Gringo's for causing the fire, which damaged them. (Doc. No. 9). On June 2, 2006, German

Mutual filed an answer and cross-claim against Senor Gringo's alleging that it was entitled to indemnification, subrogation, and/or contributions from co-defendant Senor Gringo's for any liability it incurred. (Doc. No. 12). On June 23, 2006, Northtowne filed a cross-claim against German Mutual for contribution and/or indemnity. (Doc. No. 15).

{¶5} On January 12, 2007, Senor Gringo's filed a cross-claim against co-defendant Northtowne seeking contribution and/or indemnification. (Doc. No. 31).

{¶6} On March 30, 2007, Northtowne filed a motion for summary judgment based upon the lease agreements with the plaintiffs and Senor Gringo's. (Doc. No. 33). On April 14, 2007, the trial court referred the case for mediation, but that effort ultimately proved unsuccessful. (Doc. Nos. 35, 47). On May 24, 2007, the trial court granted Northtowne's motion for summary judgment as to the plaintiffs' claims and Senor Gringo's cross-claim. (Doc. No. 36).

{¶7} On June 22, 2007, plaintiffs filed a motion for partial summary judgment against German Mutual on its breach of contract and bad faith claims. (Doc. Nos. 37-38). On August 15, 2007, German Mutual filed a motion to bifurcate the trial on the issues of breach of contract (damages) plaintiffs suffered and the plaintiffs' bad faith claim. (Doc. No. 48).

{¶8} On January 10, 2008, the trial court denied plaintiffs' motion for partial summary judgment. (Doc. No. 65). That same day, the trial court also

granted German Mutual's motion to bifurcate the trial, noting that the "currently established trial date will be used for a determination of the actual losses to Plaintiffs and a subsequent trial date will be established for determination of Plaintiffs' bad faith claims against German Mutual Insurance Company." (Doc. No. 66).

{¶9} On January 17, 2008, plaintiffs filed a motion to sever German Mutual's cross-claims against Senor Gringo's from their claims against German Mutual. (Doc. No. 67).

{¶10} On February 19, 2008, the matter proceeded to a hearing to determine the amount of damages suffered by plaintiffs, which was proximately caused by the December 20, 2005 fire. At the conclusion of the hearing, the jury returned a general verdict for plaintiffs in the amount of $105,263.50. (Doc. No. 83). On March 4, 2008, the trial court entered judgment as follows:

> **1)** **Plaintiffs Steve Brown, Kimberly Brown and Underwater World Fish & Pets, Inc. are granted judgment in the amount of $105,263.50 against Defendant German Mutual Insurance Company in contract; and against Defendant Senor Gringo's, Inc. in tort, plus interest from the date of this judgment and court costs;**
> **2)** **Plaintiffs Steve Brown, Kimberly Brown, and Underwater World Fish & Pets, Inc. [sic] claim for bad faith against Defendant German Mutual Insurance Company shall proceed as already scheduled for a jury trial on April 2 and 3, 2008.**

(Doc. No. 85).

{¶11} On March 18, 2008, Senor Gringo's filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, which German Mutual joined. (Doc. Nos. 87, 89).  On April 2, 2008, Senor Gringo's and German Mutual filed notices of appeal from the trial court's March 4, 2008 judgment entry, but this Court dismissed for lack of a final appealable order since the insurer bad faith claim remained. (Doc. Nos. 92, 95); (App. Case Nos. 4-08-11; 4-08-12).

{¶12} On May 8, 2008, the trial court overruled Senor Gringo's and German Mutual's motion for judgment notwithstanding the verdict and/or a new trial. (Doc. Nos. 100, 106).

{¶13} On August 26, 2008, the trial court adopted an agreed judgment entry and satisfaction of judgment, which provided:

> **1.    The Judgment recovered by the Plaintiffs on March 4, 2008 against Defendant German Mutual Insurance Co. has been fully paid and satisfied and the court costs on said action shall be paid in full by Defendant German Mutual Co.**
> **2.    Plaintiffs hereby assign and transfer to Defendant German Mutual Insurance Co. the Judgment recovered by them against Defendant Senor Gringo's Inc. on March 4, 2008.**
> **3.    Plaintiffs' bad faith claim against Defendant German Mutual Insurance Co. has been fully and completely settled and all claims by Plaintiffs against Defendant German Mutual Insurance Co. are hereby dismissed with prejudice to future action by Plaintiffs against Defendant German Mutual Insurance Co., court costs to Defendant German Mutual Insurance Co.**
> **4.    The cross-claim of Defendant German Mutual Insurance Co. against Defendant Senor Gringo's Inc. remains outstanding and unresolved.**

(Doc. No. 111). This entry was signed by the trial court judge, the attorneys for the plaintiffs and defendant, and Steven Brown, Kimberly Brown, and Underwater World (by Kimberly Brown, President). (Id.).

{¶14} On September 22, 2008, Senor Gringo's filed a notice of appeal from the trial court's March 4, 2008 and the August 26, 2008 judgment entries and satisfaction of judgment. (Doc. No. 112). This Court, however, dismissed the appeal for lack of jurisdiction since the August 26, 2008 judgment entry indicated a pending cross-claim against Senor Gringo's. (App. No. 4-08-32).

{¶15} On October 8, 2008, the trial court held a pre-trial conference regarding German Mutual's remaining cross-claim against Senor Gringo's. (Doc. No. 116). The trial court thereafter granted the parties time to amend the pleadings and set a schedule for the filing of motions for summary judgment. (Id.).

{¶16} On October 24, 2008, German Mutual filed its amended cross-claim against Senor Gringo's alleging, in its first cross claim, that it was entitled to indemnification, subrogation and/or contribution from co-defendant Senor Gringo's. (Doc. No. 117). In its second cross-claim, German Mutual alleged it was assigned the judgment rendered against co-defendant Senor Gringo's, citing paragraph two (2) of the August 26, 2008 judgment entry. (Id., citing Doc. No. 111).

{¶17} On December 8, 2009, German Mutual and Senor Gringo's filed cross-motions for summary judgment. (Doc. Nos. 119, 120). On June 18, 2009, the trial court overruled Senor Gringo's motion for summary judgment and awarded summary judgment in favor of German Mutual. (Doc. No. 126).

{¶18} On July 20, 2009, Senor Gringo's filed a notice of appeal from the trial court's grant of summary judgment in favor of German Mutual, which is the present appeal before this Court. Senor Gringo's appeals raising five assignments of error for our review.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED BY DENYING APPELLANT SENOR GRINGO'S, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST APPELLEE GERMAN MUTUAL INSURANCE CO., FILED ON DECEMBER 8, 2008. THE TRIAL COURT DID SO WITH ITS JUDGMENT ENTRY FILED ON JUNE 18, 2009, AND ATTACHED TO THE NOTICE OF APPEAL FILED ON JULY 20, 2009.**

{¶19} In its first assignment of error, Senor Gringo's argues that the trial court erred in granting summary judgment in German Mutual's favor because German Mutual did not have a valid assignment of the Browns' and Underwater World's judgment against Senor Gringo's. Senor Gringo's also argues that German Mutual failed to prosecute its cross-claim at the February 19-20, 2008 jury trial, and therefore, waived further action on its cross-claim.

{¶20} We review a decision to grant summary judgment de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.

{¶21} "Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶49.

{¶22} Senor Gringo's arguments lack merit. The February 19, 2008 jury trial was specifically held for the purpose of determining the amount of actual damages proximately caused to the Browns and Underwater World as a result of the fire at Senor Gringo's. (Jan. 10, 2008 JE, Doc. No. 66); (June 18, 2009 JE, Doc. No. 126). The trial court noted the relevant procedural history of the case in its judgment entry granting summary judgment. (June 18, 2009 JE, Doc. No. 126). Notably, the trial court stated that the purpose of jury trial was to "allow a trier of fact to determine those damages suffered by the Plaintiffs as a proximate result of

the fire loss/smoke damage claim. This issue, *and only this issue*, was submitted for consideration of the jury." (Id., emphasis added). In fact, the trial court specifically instructed the jury that:

> **In this case, it has been determined that the Defendants, German Mutual Insurance Company and Senor Gringo's, Inc. are responsible for the consequences of the incident which is the subject of this lawsuit. Your duty now is solely to determine the amount of damages to the Plaintiffs, Steve Brown, Kimberly Brown and Underwater World Fish and Pets, Inc., proximately caused by the incident.**

(Feb. 19, 2008 Tr. at 335). The record also indicates that the parties had notice of the trial court's intention to submit only this issue to the jury. (Id. at 9-18, 290-234, 352); (Jan. 10, 2008 JE, Doc. No. 66).

{¶23} After the trial court received notice of satisfaction of the March 4, 2008 judgment against German Mutual for its breach of the insurance policy, the trial court held a pre-trial conference regarding German Mutual's remaining counter-claim against Senor Gringo's. (Doc. No. 116). The trial court thereafter granted the parties time to amend the pleadings and set a schedule for the filing of motions for summary judgment. (Id.). Under these circumstances, we cannot find that German Mutual waived its cross-claim by failing to prosecute it at the February 19, 2008 jury trial when the sole issue at the jury trial was a determination of the amount of actual damages suffered by the plaintiffs.

**{¶24}** We must also reject Senor Gringo's argument that the trial court erred in awarding German Mutual summary judgment because the plaintiffs' assignment was invalid. Senor Gringo never presented this argument to the trial court and has, therefore, waived this argument on appeal. (Doc. Nos. 118, 120). See, e.g., *Lhamon v. Prater*, 3d Dist. No. 1-09-34, 2009-Ohio-5904, ¶17, citing *Janosek v. Janosek*, 8th Dist. Nos. 91882, 91914, 2009-Ohio-3882, ¶44. Aside from that, the trial court awarded summary judgment to German Mutual based upon the assignment *and* its right to subrogation. (June 18, 2009 JE, Doc. No. 126). The insurance contract provided, in pertinent part: "**Subrogation** -- "If 'we' pay for a loss under the Property Coverages, 'we' may require that 'you' assign to 'us' any right of recovery against others, up to the amount 'we' have paid." (German Mutual Ins. Policy, Additional Conditions, Section 8, at pg. 36; Doc. No. 1, attached.). Since the insurance contract provided German Mutual with a right of subrogation, the trial court's award of summary judgment in favor of German Mutual on this basis was not in error.

**{¶25}** For all these reasons, Gringo's first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. II

**SHOULD ASSIGNMENT OF ERROR NUMBER 1 BE FOUND NOT WELL TAKEN BY THIS COURT, THE TRIAL COURT ERRED BY ALLOWING THE JURY TO CONSIDER TWO ITEMS OF DAMAGES AMOUNTING TO $27,436.20, THAT APPELLEE GERMAN MUTUAL INSURANCE COMPANY'S**

**PREDECESSORS PLAINTIFFS STEVE AND KIMBERLY BROWN WERE NOT THE REAL PARTIES IN INTEREST. THE COURT'S ERRORS IN RULING ON APPELLANT'S OBJECTIONS ON THIS ISSUE ARE AT PAGES 157-158, AND PAGES 191 AND 192 OF VOLUME I AND II OF THE TRIAL TRANSCRIPT. CONSEQUENTLY, SENOR GRINGO'S, INC. WAS DENIED A FAIR TRIAL.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED BY ALLOWING THE JURY TO CONSIDER APPELLEE GERMAN MUTUAL INSURANCE COMPANY'S PREDECESSORS PLAINTIFFS STEVE BROWN AND KIMBERLY BROWN'S EXHIBIT 24. THIS APPELLANT OBJECTED TO THE ADMISSION OF THAT EXHIBIT, A LISTING OF PLAINTIFFS' CLAIMED DAMAGES BECAUSE IT LISTED REPLACEMENT COST, RATHER THAN FAIR MARKET VALUE. APPELLANT SENOR GRINGO'S, INC.'S OBJECTION TO THAT EXHIBIT, AND THE TRIAL COURT'S RULING IS ON PAGES 187-188 OF VOLUME I OF THE TRIAL TRANSCRIPT. AGAIN, CONSEQUENTLY, APPELLANT SENOR GRINGO'S, INC. WAS DENIED A FAIR JURY TRIAL.**

{¶26} In its second assignment of error, Senor Gringo's argues that the trial court erred when it allowed the jury to consider evidence of wages that were owed to plaintiffs' store manager, Matt, and evidence of rent owed for storage of the plaintiffs' goods. Specifically, Senor Gringo's argues that since the plaintiffs had not paid these obligations, they were not the real parties in interest, and the trial court should not have allowed the evidence. Senor Gringo's further argues that

the trial court committed plain error by overruling the motion for a directed verdict.

**{¶27}** In its third assignment of error, Senor Gringo's argues that the trial court erred by allowing the jury to consider plaintiffs' exhibit twenty-four (24), which was a list of the claimed damages plaintiffs suffered. Specifically, Senor Gringo's argues that the exhibit listed the replacement costs of the property rather than fair market value, which is the appropriate measure of damages.

**{¶28}** "A trial court may grant a motion for a directed verdict if, after construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds 'could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.'" *Hickle v. Haynes-Albion Corp.*, 3d Dist. No. 13-06-24, 2007-Ohio-4236, ¶25, quoting *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶18, citing *Crawford v. Halkovics* (1982), 1 Ohio St.3d 184, 185-86, 438 N.E.2d 890; Civ.R. 50(A)(4). When the opposing party has failed to adduce any evidence on the essential elements of the claim, a directed verdict is appropriate. *Cooper v. Grace Baptist Church* (1992), 81 Ohio App.3d 728, 734, 612 N.E.2d 357. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury and constitutes a question of law. *Burns*, 167 Ohio App.3d at 823, citing *Hargrove v. Tanner* (1990), 66 Ohio

App.3d 693, 695, 586 N.E.2d 141. As such, this Court reviews a trial court's ruling on a motion for directed verdict de novo. *Burns*, 167 Ohio App.3d at 823, citing *McConnell v. Hunt Sports Ents.* (1999), 132 Ohio App.3d 657, 686-87, 725 N.E.2d 1193.

{¶29} "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 209, 436 N.E.2d 1001. The plain error doctrine is not favored in civil cases and may be applied only in "the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.

{¶30} Decisions regarding the admissibility of evidence are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Hickle*, 2007-Ohio-4236, at ¶31, citations omitted. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "However, 'even

where a trial court abuses its discretion in the admission of evidence,' a reviewing court will not reverse unless the error affected a substantial right of the party at issue." *Hickle*, 2007-Ohio-4236, at ¶31, citing *State v. Lundgren* (1995), 73 Ohio St.3d 474, 486; Evid.R. 103(A); Civ.R. 61.

**{¶31}** The testimony at issue in Senor Gringo's second assignment of error is the following:

> **Q: Now this long list of damages you talked about [Plaintiffs' Ex. 24], * * * I need to ask you about a couple things. You owe an employee named Matt. I'm sorry I didn't catch his last name. Who's that?**
> **A: Gruenhagen [sic].**
> **Q: Over $3,000. I take it since you owe him that money, you have not paid him that money, correct?**
> **A: Correct.**
> **Q: So isn't he the real party in interest or the real party that should be seeking that money from the Defendants or somebody else than you?**
> **MR. GOLDBERG: Objection. Calls for a legal conclusion.**
> **MR. MOHLER: But you haven't paid it.**
> **THE COURT: Sustained. The jury will disregard.**
> **Q: How about the $24,000 that you've said you spent $1,000 a day? Have you paid that $24,000 to that storage facility?**
> **A: No.**
> **Q: So that's not your loss, is it?**
> **MR. GOLDBER: Objection. Calls for a legal conclusion.**
> **THE COURT: Overruled.**
> **A: Yeah, it's owed.**

(Feb. 19, 2008 Tr. at 157-58). At the close of the plaintiffs' case, Senor Gringo's moved for a partial directed verdict on the basis that the plaintiffs were not the real parties in interest with respect to the monies owed to the store manager, Matt, and

the storage facility. (Id. at 191-92). Overruling the motion, the trial court noted that: "[t]he jury [could] find that that is an indebtedness incurred by these parties as a result of the claimed loss. The jury could find that that debt is a consequence suffered by these parties. As far as the credibility of those claims, that's for the jury to determine." (Id. at 192).

{¶32} "A 'real party in interest' is 'one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case.'" *First Union Natl. Bank v. Hufford*, 146 Ohio App.3d 673, 2001-Ohio-2271, 767 N.E.2d 1206, ¶13, quoting *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24, 485 N.E.2d 701. "To determine whether the requirement that the action be brought by the real party in interest is sufficed, courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." *Campbell*, 20 Ohio St.3d at 25. If a party is not a real party in interest, then the party lacks standing to invoke the jurisdiction of the court and is not entitled to judgment as a matter of law. *Hufford*, 2001-Ohio-2271, at ¶13, citation omitted. Whether established facts confer standing to assert a claim is a matter of law reviewed de novo. *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶23.

**{¶33}** Applying the foregoing rules sub judice, we find no abuse of discretion in the trial court's ruling on plaintiffs' objection. Whether a party is a real party in interest is a question of law and, as such, is an impermissible question for a lay witness. *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶71; *Associated Estates Realty Corp. v. Samsa*, 8th Dist. No. 84297, 2004-Ohio-6635, ¶20, citing *Byrley v. Nationwide Life Ins. Co.* (1994), 94 Ohio App.3d 1, 640 N.E.2d 187; *Deck v. Wellston City Schs.* (Mar. 10, 1997), 4th Dist. No. 96 CA 788. Therefore, the trial court's ruling on plaintiffs' objection was correct.

**{¶34}** Furthermore, the trial court did not commit plain error by overruling Senor Gringo's motion for a partial directed verdict. Plaintiffs' action stemmed from damages it sustained from Senor Gringo's tortious conduct; to wit: smoke damage it sustained from a fire at Senor Gringo's. As such, plaintiffs had more than a mere interest in the action itself; but instead, plaintiffs would be directly affected by the outcome of the case. *Hufford*, 2001-Ohio-2271, at ¶13, quoting *Campbell*, 20 Ohio St.3d at 24. Furthermore, plaintiffs had a substantive right to all those damages which were proximately caused by Senor Gringo's tortious conduct. *Campbell*, 20 Ohio St.3d at 24. Steve Brown testified that the storage unit in which he stored products and store fixtures following the fire cost $24,000.00 from March 1, 2006 to the day of the trial, which was $1,000.00/month. (Feb. 19, 2009 Tr. at 133-34). Brown further testified that he

signed a contract to pay John Sindel for the storage, and he intended on paying Sindel once the litigation was over. (Id. at 181). Brown also testified that he owed their store manager, Matt, $3,500.00 for wages earned immediately following the fire that were paid to retain their employees per German Mutual's instruction. (Id. at 177-78, 180). Accordingly, the trier of fact could have reasonably determined that these liabilities were proximately caused damages from the fire at Senor Gringo's. Under these circumstances, we cannot conclude that the trial court's ruling "seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Davidson*, 79 Ohio St.3d 116, at syllabus. Therefore, we cannot find that the trial court committed plain error by allowing the jury to consider the aforementioned liabilities for purposes of its damages calculation.

{¶35} Senor Gringo's second assignment of error lacks merit.

{¶36} Senor Gringo's next argues that the trial court erred by admitting plaintiff's exhibit twenty-four (24) as it reflected the replacement value of the property damaged, not fair market value as allowed under Ohio law. The rules respecting the measure of damages for injury to personal property and the relevant evidence thereto have been aptly stated as follows:

> **In Ohio the general rule is that the measure of damages for injury to personal property is the difference in market value of the property immediately before and immediately after the**

> **injury. Where the property is totally destroyed, the measure of damages is the reasonable market value of the property immediately before its destruction. However, "[w]hen market value cannot be feasibly obtained, a more elastic standard is resorted to, sometimes called the standard of value to the owner."** *Bishop v. East Ohio Gas Co.* **(1944), 143 Ohio St. 541, 546, 28 O.O. 470, 472, 56 N.E.2d 164, 166. This value is determined via consideration of a number of factors including value to the owner, original cost, replacement cost, salvage value, if any, and fair market value at the time of loss. See** *Employers' Fire Ins. Co. v. United Parcel Service* **(1950), 89 Ohio App. 447, 450, 45 O.O. 475, 477, 99 N.E.2d 794, 796-797. In determining this value, a court may consider the owner's opinion "* * * which will be some evidence of the actual value, though not conclusive."** *Shimola v. Nationwide Ins. Co.* **(1986), 25 Ohio St.3d 84, 86-87, 25 OBR 136, 138, 495 N.W.2d 391, 393, citing** *Bishop, supra,* **143 Ohio St. at 546, 28 O.O. at 472, 56 N.E.2d at 166.**

*Cooper v. Feeney* (1986), 34 Ohio App.3d 282, 283-84, 518 N.E.2d 46.

**{¶37}** Brown testified that he determined the values of the damaged property listed in plaintiffs' exhibit twenty-four (24) "by receipts of the actual purchase price or a[n] estimated replacement cost or by looking on the internet and finding a comparable item." (Feb. 19, 2008 Tr. at 125). Plaintiff's exhibit twenty-four (24) also stated plaintiffs' damages in terms of "replacement cost." (Plaintiffs' Ex. 24). Although replacement costs are not the proper measure of damages for personal property loss under Ohio law, the trial court admitted plaintiffs' exhibit twenty-four (24) finding that: "while [replacement costs] is not the measure of damages, that does not necessarily mean it is inadmissible as evidence so that may have relevance to the determination of fair market value,

- 18 -

which is the proper measure of damages * * *." (Id. at 188); *Cooper*, 34 Ohio App.3d at 283. The trial court also specifically instructed the jury that:

> **\* \* \*you will determine an amount of money that will reasonably compensate Plaintiffs for the loss \* \* \* or damage to personal property. The measure of damage which you will apply is the difference in the fair market value of their property immediately before and immediately after the incident.**
> **The measure of damages is not replacement of personal property with new or better property but must be based upon the fair market value of the property immediately before the incident. Evidence of cost of replacement with new property may be considered by you together with all the evidence to the extent that you find it relevant to the fair market value of the property immediately before and after the incident.**

(Id. at 341-42). Additionally, we note that the plaintiffs sought $126,603.27 in personal property damages, plus damages of $20,000/year for twenty to twenty-five (20-25) years for the lost profits, but the jury only awarded $105,263.50 in damages, which tends to indicate that the jury did not award replacement costs of the damaged property. (Id. at 299-300); (Doc. No. 83). Furthermore, we note that plaintiffs' exhibit twenty-four (24) also provided the age of many of the damaged personal property items. (Plaintiffs' Ex. 24). This evidence, then, would have aided the jury in determining the fair market values of the personal property. Since the trial court admitted the exhibit for purposes of determining fair market value as permitted by law, we cannot conclude that the trial court abused its discretion by admitting the exhibit for this purpose.

**{¶38}** For all the aforementioned reasons, Senor Gringo's second and third assignments of error are overruled.

## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED BY DENYING APPELLANT SENOR GRINGO'S, INC.'S MOTION FOR JNOV; OR IN THE ALTERNATIVE, FOR A NEW TRIAL FILED ON MARCH 18, 2008. THE TRIAL COURT DID SO WITH ITS JUDGMENT ENTRY FILED ON MAY 8, 2008.**

**{¶39}** In its fourth assignment of error, Senor Gringo's argues that the trial court erred by denying its motion for judgment notwithstanding the verdict (JNOV) or motion for new trial. In support of this argument, Senor Gringo's again argues that the trial court should have reduced the damages by $27,036.20, those monies owed to the plaintiffs' employee Matt for wages and John Sindel for two years of storage. Senor Gringo's also argues that the trial court should not have allowed the jury to consider evidence that the plaintiffs' lost $6,427.80 in boarding due to storing the store goods in their pole barn for 60 days. Senor Gringo's further points out that plaintiffs' claimed loss of $2,832 for a credit card machine should not have been presented before the jury since plaintiffs did not own the machine. Finally, Senor Gringo's argues that the trial court committed plain error by directing a verdict on the issue of proximate cause in its jury instructions.

{¶40} "The standard of review for a ruling on a motion for judgment notwithstanding the verdict is the same one applicable to a motion for directed verdict." *Burns*, 167 Ohio App.3d at 823, citing *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334.

{¶41} Civ.R. 59(A) provides several grounds for which a trial court may grant a new trial, including the following grounds applicable to this appeal:

> **(1)    Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;**
> **\* \* \***
> **(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;**
>
> **(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;**
>
> **(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;**
>
> **(7) The judgment is contrary to law; \* \* \***
>
> **(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.**

A trial court's decision of whether to grant a motion for a new trial premised upon Civ.R. 59(A)(1), (4), (5), or (6) is reviewed for an abuse of discretion. *Harris v. Mt. Sinai Med. Ctr.*, 116 Ohio St.3d 139, 2007-Ohio-5587, 876 N.E.2d 1201,

¶¶35-36; *Lewis v. Nease*, 4th Dist. No. 05CA3025, 2006-Ohio-4362, ¶73; *McDonald v. McDonald* (Aug. 27, 1998), 4th Dist. No. 96CA912, at *5-6; *Ward v. Geiger*, 3d Dist. No. 14-05-14, 2006-Ohio-6853, ¶56; *Wendell v. Hightower* (Dec. 24, 2001), 3d Dist. No. 15-01-08, at *2.

**{¶42}** A trial court's ruling on a motion for a new trial premised upon Civ.R. 59(A)(7) and (9), however, present questions of law reviewed de novo. *Lewis*, 2006-Ohio-4362, at ¶76; *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 280 N.E.2d 896; *Ferguson v. Dyer* (2002), 149 Ohio App.3d 380, 383, 777 N.E.2d 850, 852, citing *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 262 N.E.2d 685, paragraph two of the syllabus. A trial court, however, may only grant a new trial pursuant to Civ.R. 59(A)(9) if the challenged action was both legally erroneous and prejudicial. *Sinea v. Denman Tire Corp.* (1996), 135 Ohio App.3d 44, 65, 732 N.E.2d 1033; *Sanders v. Mt. Sinai Hosp.* (1985), 21 Ohio App.3d 249, 252, 487 N.E.2d 588.

**{¶43}** We have already rejected Senor Gringo's arguments respecting the trial court's admission of evidence related to the storage costs and wages owed to the plaintiffs' store manager. Since the jury could reasonably conclude that these damages were proximately caused by Senor Gringo's tortious conduct, we find no error with the trial court's ruling on Senor Gringo's motion for JNOV or a new trial upon these grounds. With respect to the $6,427.80 in damages, Brown

testified that this money was spent on food and bedding costs for the animals and fish he stored at his storage building for sixty (60) days. (Feb. 19, 2008 Tr. at 117-18). Brown testified that the $2,832.00 in damages represented the cost of a "credit card machine with keypad," which amount he "based on a forty-eight month lease of the equipment at $59 a month." (Id. at 130). Senor Gringo's never raised an objection at trial as to these damages; rather, it raised these concerns for the first time in its motion. (Feb. 19, 2008 Tr. at 117-20, 130); (Doc. No. 106). Furthermore, Senor Gringo's had an opportunity to present evidence demonstrating that plaintiffs' were not damaged to the extent they alleged at trial, but did not question Brown about these damages. (Feb. 19, 2008 Tr. at 137-72). Based upon the evidence presented, the jury could have reasonably concluded that the plaintiffs' suffered damages in these amounts; and therefore, we cannot conclude that the trial court erred by denying plaintiffs' motion on these grounds.

{¶44} Senor Gringo's also argues that the trial court committed plain error by directing a verdict in favor of the plaintiffs on the issue of proximate cause in its jury instructions; and therefore, the trial court erred when it denied its motion for JNOV or a new trial. We disagree.

{¶45} "A trial court has discretion in determining the precise language to include in its instructions to the jury." *Ward v. Geiger*, 3d Dist. No. 14-05-14, 2006-Ohio-6853, ¶36, citing *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 602, 640

N.E.2d 159. However, it is the trial court's duty to include in its instructions a correct, clear, and complete statement of the law. *Ward*, 2006-Ohio-6835, at ¶36, citations omitted. "Ambiguity in jury instructions does not constitute reversible error unless the jury was probably misled 'in a matter materially affecting the complaining party's substantial rights.'" Id., citing *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165.

{¶46} The plain error doctrine is not favored in civil cases and may be applied only in "the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Davidson*, 79 Ohio St.3d 116, at syllabus.

{¶47} When it instructed the jury, the trial court stated, in pertinent part:

**\* \* \* it has been determined that the Defendants, German Mutual Insurance Company and Senor Gringo's, Inc., are responsible for the consequences of the incident which is the subject of this lawsuit. Your duty now solely is to determine the amount of damages to the Plaintiffs \* \* \* proximately caused by the incident.**
**\* \* \***
**You have previously been instructed that it has been determined that Defendant's are responsible for the subject incident. The Defendants are responsible for those damages which were proximately caused by the incident.**
**\* \* \***

> **As mentioned, the responsibility of Defendants is no longer in dispute in this cause. The issues to be decided by you, the jury, are what sums of money will fairly and reasonably compensate the Plaintiffs for the damages, *if any*, proximately caused by this incident.**

(Feb. 19, 2008 Tr. at 335, 340-41) (emphasis added). Senor Gringo's objected to this jury instruction on the basis that the jury should "* * * first determine that there was a proximate cause of the damage in the interrogatories and then if they did not, a verdict for Defendant, Senor Gringo's. If they did, a verdict for the Plaintiffs." (Id. at 352). The trial court overruled the objection, noting that:

> **\* \* \* the jury has been told that they are to return a verdict for those damages proximately caused and they were correctly instructed on the law of proximate cause so it's effectively in there and I, obviously, had advised counsel prior to instructing the jury that it was my intention to do so in this fashion**.

{¶48} After reading the jury instructions in their entirety, we are not persuaded that the trial court committed plain error. The trial court properly instructed the jury on proximate causation and allowed for the fact that the jury might conclude that the measure of damages proximately caused was zero dollars. Furthermore, after reading the entire record herein, we conclude that the jury instructions accurately represent Senor Gringo's position that it was responsible only for those damages that were proximately caused by the fire. Under these circumstances, we are not persuaded that the trial court committed plain error.

- 25 -

**{¶49}** Furthermore, we are hesitant to find error, especially plain error, with the trial court's ruling on Senor Gringo's motion since Senor Gringo's has provided no transcript of the motion hearing in the record. Senor Gringo's filed a motion for JNOV or, alternatively, a new trial on March 18, 2008. (Doc. No. 87). On April 15, 2008, the trial court held a hearing on the motion wherein it ruled on the motion and instructed Attorney Edward T. Moehler to submit a proposed judgment entry. (Doc. No. 100). On May 8, 2008, the trial court filed its entry overruling the motion for JNOV or, alternatively, a new trial. (Doc. No. 106). The appellant is responsible for obtaining and timely delivering to the trial court clerk a complete transcript of the proceedings. App.R. 9(B) and Loc.R. 5(A). While the judgment entry reflects the trial court's ultimate ruling on the motions, it does not reflect the trial court's reason(s) for denying the motion. (Doc. No. 106). Without knowing the trial court's reason(s) for denying the motions, we are unable to determine if the trial court erred. *McNeil v. Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536, 899 N.E.2d 1054, ¶39. Without a transcript, we must presume regularity of the proceedings and that the trial court acted properly by denying Senor Gringo's motions. Id., citing *Lawless v. Kinsey* (Sept. 8, 1997), 3d Dist. No. 6-97-11, at *2, citing *Chaney v. East* (1994), 97 Ohio App.3d 431, 435, 646 N.E.2d 1138; *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 314, 549

N.E.2d 1237, citing *Meinhard Commercial Corp. v. Spoke and Wheel, Inc.* (1977), 52 Ohio App.2d 198, 201-02, 368 N.E.2d 1275.

{¶50} For all these reasons, Senor Gringo's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. V

**THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶51} In its fifth and final assignment of error, Senor Gringo's argues that the jury's verdict was against the manifest weight of the evidence. Specifically, Senor Gringo's argues that the plaintiffs produced no evidence that he owned his inventory at the time of the jury trial or that he had an agreement to pay $24,000 for storage fees. Further, Senor Gringo's argues that the jury was allowed to hear evidence about the plaintiffs' continued payment of salaries, payroll, and boarding of animals and fish at their home even though these decisions were not financially proper. Finally, Senor Gringo's argues that the jury was also inappropriately permitted to hear evidence about the plaintiffs' net income through March 30, 2006, a full month after they were ordered to vacate the mall premises.

{¶52} "'[J]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Knipp v. Sadler*, 3d

Dist. No. 6-09-04, 2009-Ohio-4444, ¶7, quoting *In C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus. See, also, *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶24.

**{¶53}** Senor Gringo's arguments lack merit. To begin with, Senor Gringo's argument respecting the evidence of plaintiffs' net income goes to the admissibility of the evidence, not whether the jury's verdict was against the manifest weight of the evidence. As such, we decline to address this argument. App.R. 16(A); App.R. 12(A)(2). Next, although Sharon Filas, a C.P.A., testified that plaintiffs' balance sheet "shows that they were in a really difficult financial situation," she did not testify that plaintiffs' continued payment of salary, payroll, and boarding costs were financially unsound decisions as Senor Gringo's argues. (Feb. 19, 2008 Tr. at 215). Senor Gringo's has not provided this Court with any transcript citation for this bald assertion, and, as such, we decline to address it further. App.R. 16(A)(7), (D); App.R. 12(A)(2); Loc.R. 7(C), (F). Finally, we must reject Senor Gringo's argument that the plaintiffs failed to produce evidence that they were obligated to pay $24,000 for storage as the record belies that assertion as well. (Feb. 19, 2008 Tr. at 157-59). Overall, Senor Gringo's arguments lack substantive merit and, furthermore, lack any citation to the record or meaningful citation to legal authority in support thereof. As such, we need not address them. App.R. 16(A)(7); App.R. 12(A)(2); Loc. R. 7(C), (F). Additionally,

upon our independent review of the transcript we cannot conclude that the jury's verdict is against the manifest weight of the evidence.

**{¶54}** For all these reasons, Senor Gringo's fifth assignment of error is overruled.

**{¶55}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**